# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **ENTERGY TEXAS, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | |
| | § | Case No. 1:16-CV-00277-RP |
| | § | |
| **DONNA NELSON**, Chairman of the Public | § | |
| Utility Commission of Texas, | § | |
| | § | |
| **BRANDY MARTY MARQUEZ**, | § | |
| Commissioner of the Public Utility | § | |
| Commission of Texas, and | § | |
| | § | |
| **KENNETH W. ANDERSON**, Commissioner | § | |
| of the Public Utility Commission of Texas, | | |
| | | |
| Defendants. | | |

## TEXAS INDUSTRIAL ENERGY CONSUMERS' INITIAL BRIEF

Rex VanMiddlesworth
State Bar No. 20449400
Rex.vanm@tklaw.com
Michael McMillin
State Bar No. 24088034
Michael.mcmillin@tklaw.com
Thompson & Knight LLP
98 San Jacinto Blvd., Suite 1900
Austin, Texas 78701
(512) 469.6100
(512) 469.6180 FAX

**ATTORNEYS FOR TEXAS INDUSTRIAL
ENERGY CONSUMERS**

## IDENTITY OF PARTIES AND COUNSEL

The following is a list of all parties to this case and the names and addresses of all trial counsel:

| Plaintiff: | *Trial Counsel:* |
|---|---|
| Entergy Texas, Inc. | John W. Williams<br>State Bar No. 21554100<br>jwilliams@dwmrlaw.com<br>Marnie A. McCormick<br>State Bar No. 00794264<br>mmccormick@dwmrlaw.com<br>Duggins, Wren, Mann & Romero, LLP<br>P. O. Box 1149<br>Austin, Texas 78767-1149<br>(512) 744-9300<br>(512) 744-9399 fax |
| **Defendants**:<br><br>Donna L. Nelson,<br>Chairman of the Public Utility Commission of Texas<br><br>Brandy Marty Marquez, Commissioner of the Public Utility Commission of Texas<br><br>Kenneth W. Anderson, Jr., Commissioner of the Public Utility Commission of Texas | *Trial Counsel:*<br><br>John R. Hulme<br>State Bar No. 10258400<br>John.Hulme@texasattorneygeneral.gov<br>Kellie E. Billings-Ray<br>State Bar No. 24042447<br>Kellie.Billings-Ray@texasattorneygeneral.gov<br>Office of the Attorney General Environmental Protection Division<br>P. O. Box 12548, MCC-066<br>Austin, Texas 78711-2548<br>(512) 463-2012<br>(512) 320-0911 (fax) |

| Intervenor Defendants: | *Trial Counsel:* |
|---|---|
| Texas Industrial Energy Consumers | Rex VanMiddlesworth<br>State Bar No. 20449400<br>Rexvanm@tklaw.com<br>Michael McMillin<br>State Bar No. 24088034<br>Michael.mcmillin@tklaw.com<br>Thompson & Knight LLP<br>98 San Jacinto Blvd., Ste. 1900<br>Austin, Texas 78701<br>(512) 469-6100<br>(512) 469-6180 (fax) |
| **Cities of Anahuac, Beaumont, Bridge City, Cleveland, Conroe, Dayton, Groves, Houston, Huntsville, Liberty, Montgomery, Navasota, Nederland, Oak Ridge North, Orange, Pine Forest, Pinehurst, Port Arthur, Port Neches, Rose City, Shenandoah, Silsbee, Sour Lake, Splendora, Vidor, and West Orange, Texas** | Daniel J. Lawton<br>State Bar No. 00791082<br>dlawton@ecpi.com<br>Molly Mayhall Vandervoort<br>State Bar No. 24048265<br>molly@mayhallvandervoort.com<br>Lawton Law Firm, P.C.<br>12600 Hill Country Blvd., Ste. R275<br>Austin, Texas 78738<br>(512) 322-0019<br>(855) 298-7978 (fax) |

# TABLE OF CONTENTS

PAGE

IDENTITY OF PARTIES AND COUNSEL ................................................................. i

INDEX OF AUTHORITIES .......................................................................................... iv

GLOSSARY ....................................................................................................................... v

I.  INTRODUCTION ....................................................................................................... 1

II. ARGUMENT AND AUTHORITIES ..................................................................... 5

      A.     In 2009, the PUCT properly exercised its authority to determine Texas's share of the $120.1 million EGSI had received in RPCE payments in 2007. .............................................................................. 7

      B.     In January 2016, the PUCT properly directed ETI to refund to ratepayers the $10.9 million in RPCE payments it had received in 2014. ................................................................................................. 10

      C.     FERC's 2015 Order only addresses the incremental payments due among the Entergy operating companies. ..................................... 13

      D.     FERC has consistently declined jurisdiction over the allocation of the $120.1 million in 2007 Receipts, and FERC's 2015 Order did not disturb that long-held position. .................................................... 15

      E.     ETI mischaracterizes the effect of FERC's 2015 Order. ........................... 17

      F.     FERC's 2015 Order did not reject the PUCT's reasoning in Docket No. 42730. ................................................................................. 21

      G.     PUCT Docket No. 42730 does not contravene any prior FERC Orders. ............................................................................................ 22

CONCLUSION AND PRAYER ................................................................................. 23

CERTIFICATE OF SERVICE .................................................................................... 24

## INDEX OF AUTHORITIES

### CASES

*Entergy Texas, Inc. v. Pub. Util. Comm'n of Tex.*, Cause No. D-1-GN-09-000816, in the 98th Judicial District Court of Travis County, Texas (Jan. 18, 2011)................................. 4, 10

*Entergy Texas, Inc. v. Pub. Util. Comm'n of Tex.*, Cause No. D-1-GN-16-000991, in the 98th Judicial District Court of Travis County, Texas (filed Mar. 7, 2016) ............................. 5

*Entergy Texas, Inc. v. Smitherman*, Cause No. A-09-CA-183-LY (W.D. Tex. Jan. 11, 2011)....................................................................................................................... 4, 10

### ADMINISTRATIVE CASES

*Application of Entergy Texas, Inc. for Authority to Change Rates and Reconcile Fuel Costs*, PUCT Docket No. 37744, 2010 WL 5240342 (Dec. 13, 2010) ................................... 10

*Application of Entergy Texas, Inc. for Authority to Change Rates and Reconcile Fuel Costs*, PUCT Docket No. 41791, 2014 WL 2154054 (May 16, 2014) ..................................... 1

*Compliance Filing of Entergy Texas, Inc. Regarding Jurisdictional Allocation of 2007 System Agreement Payments*, PUCT Docket No. 35269, 2009 WL 2497473 (Jan. 9, 2009)............................................................................................................................. passim

*Entergy Servs., Inc.*, 119 FERC ¶ 61,191 (2007)....................................................................... 16

*Entergy Servs., Inc.*, 120 FERC ¶ 61,094 (2007).................................................................... 2, 16

*Entergy Servs., Inc.*, 127 FERC ¶ 61,126 (2009)................................................................ passim

*Entergy Servs., Inc.*, 130 FERC ¶ 61,026 (2010)....................................................................... 23

*Entergy Servs., Inc.*, 137 FERC ¶ 61,029 (2011)....................................................................... 14

*Entergy Servs., Inc.*, 148 FERC ¶ 61,086 (2014)................................................................... 4, 10

*Entergy Servs., Inc.*, 151 FERC ¶ 61,112 (2015)................................................................ passim

## GLOSSARY

| | |
|---|---|
| AR | Administrative Record |
| EGSI | Entergy Gulf States Inc. |
| EGSL | Entergy Gulf States Louisiana |
| EOC | Entergy Operating Company |
| ESA | Entergy System Agreement |
| ETI | Entergy Texas Inc. |
| FERC | Federal Energy Regulatory Commission |
| LPSC | Louisiana Public Service Commission |
| PUCT | Public Utility Commission of Texas |
| RPCE | Rough Production Cost Equalization |
| TIEC | Texas Industrial Energy Consumers |

# I.    INTRODUCTION

In September 2014, Entergy Texas Inc. (ETI) received $10.9 million in "Rough Production Cost Equalization" (RPCE) payments from the other Entergy Corporation (Entergy) operating companies (EOCs).[1]  That "bandwidth payment" was ordered by the Federal Energy Regulatory Commission (FERC) pursuant to a FERC tariff that directs the EOCs to make periodic payments among themselves to bring the differential between their electricity production costs within a +/- 11% bandwidth of one another.[2]

FERC has exclusive jurisdiction over how much ETI pays or receives in RPCE payments each year.  Ever since ETI, which exclusively serves customers in Texas, became a separate company in 2008, the Public Utility Commission of Texas (PUCT) has reflected each RPCE payment in Texas customers' rates by approving a refund when ETI received RPCE payments or a surcharge when ETI made RPCE payments.[3]  And that is exactly what the PUCT did with respect to the $10.9 million in RPCE payments that ETI received in September 2014.  In PUCT Docket No. 42730, the administrative case underlying this litigation, the PUCT did not challenge FERC's decision that ETI should receive a $10.9 million payment from its sister companies. Nor could it, as that was a matter solely within FERC's jurisdiction.  Instead, as it has done for all prior RPCE payments for ETI, the PUCT accepted FERC's determination and implemented the corresponding refund, thereby passing the RPCE receipts along to ETI's retail customers.

ETI does not contest the fact that it received a $10.9 million RPCE payment in 2014.

---

[1] AR Item 32 (Joint Stipulation of Facts) at ¶ 25.

[2] *Id.* at ¶¶ 8-11, 18.

[3] For example, just months before the $10.9 million payment that underlies this litigation, the PUCT approved $11.4 million in surcharges to pass along a separate RPCE payment that FERC ordered ETI to make to the other EOCs.  *See Application of Entergy Texas, Inc. for Authority to Change Rates and Reconcile Fuel Costs*, PUCT Docket No. 41791, Final Order at 4, ¶ 24, 2014 WL 2154054 at *3 (May 16, 2014).

Instead, it challenges the PUCT's decision to pass that payment along to ETI's Texas customers. The basis for ETI's challenge is its dissatisfaction with the PUCT's treatment of RPCE payments received by Entergy Gulf States, Inc. (EGSI)—a different company—in 2007, prior to ETI's existence.[4] ETI asserts that the PUCT's allocation of the 2007 payment conferred an "$18.6 million windfall" on Texas retail customers that must now be partially corrected by allowing ETI to keep the $10.9 million refund it received in 2014. ETI's argument is without merit for at least two reasons.

First, there was no "windfall" to Texas retail consumers back in 2009. Like this case, that one began with FERC issuing an order distributing RPCE payments between the Entergy operating companies.[5] At the time that payment was made, ETI did not yet exist, and EGSI operated in both Texas and Louisiana.[6] FERC's order awarded $120.1 million in RPCE payments (the "2007 Receipts") to EGSI.[7] However, recognizing that it did not have jurisdiction to split up the 2007 Receipts between EGSI's Texas and Louisiana retail customers, FERC left that allocation to EGSI's state regulators, the PUCT and the Louisiana Public Service Commission (LPSC).[8] The PUCT and the LPSC disagreed regarding the appropriate allocation of the 2007 Receipts. In PUCT Docket No. 35269, the PUCT found that Texas ratepayers should receive approximately 41% of the RPCE refund associated with that period based on

---

[4] *See Compliance Filing of Entergy Texas, Inc. Regarding Jurisdictional Allocation of 2007 System Agreement Payments*, PUCT Docket No. 35269, Final Order, 2009 WL 2497473 (Jan. 9, 2009).

[5] *Entergy Servs., Inc.*, 120 FERC ¶ 61,094 (2007).

[6] AR Item 32 (Joint Stipulation of Facts) at ¶¶ 3, 13-14.

[7] *Id.* at ¶ 13.

[8] 120 FERC ¶ 61,094 at P 17 ("[A]ny issues related to the allocation of [RPCE] payments and receipts among retail customers is beyond the jurisdiction of this Commission.").

Texas's share of EGSI's actual costs of producing energy.[9] However, before the PUCT issued that decision, EGSI negotiated an agreement with the LPSC under which Louisiana ratepayers would receive a greater percentage of the refund. Under the methodology agreed to by ETI and the LPSC, Texas ratepayers would be allocated only about 25% of the RPCE payment. When neither state utility commission would back down from its respective allocation decision, EGSI's successor EOCs ultimately ended up paying out $18.6 million more than EGSI received from the other EOCs.[10] Nevertheless, as set forth at length in the PUCT's decision in Docket No. 35269, the PUCT's adoption of the 41% allocation to Texas did not create a windfall, it merely returned to Texas ratepayers the amounts they were due.[11] If there was any windfall, it fell to Louisiana ratepayers, who received a share of RPCE payments well in excess of their relative share of EGSI's actual production costs during the applicable period. For ETI to assert in this case that Texas customers received an $18.6 million windfall is not only incorrect, it was specifically rejected by the PUCT in Docket No. 35269.

Second, ETI fully (and unsuccessfully) litigated the PUCT's decision in Docket No. 35269, and it is far too late for it to relitigate this alleged "windfall." After the PUCT and LPSC issued conflicting allocation decisions with respect to the 2007 Receipts, Entergy sought a FERC order declaring that the PUCT's decision in Docket No. 35269 had resulted in unlawful "trapped costs." FERC unequivocally rejected that claim and made clear that, as a multi-jurisdictional utility, EGSI had assumed the risk that state regulators could come to divergent allocation

---

[9] *Compliance Filing of Entergy Texas, Inc. Regarding Jurisdictional Allocation of 2007 System Agreement Payments*, PUCT Docket No. 35269, Final Order at Findings of Fact 29-34, 2009 WL 2497473 (Jan. 7, 2009).

[10] AR Item 32 (Joint Stipulation of Facts) at ¶¶15-17.

[11] PUCT Docket No. 35269, Final Order at Findings of Fact 29-35, 2009 WL 2497473.

decisions.[12]  ETI also appealed the PUCT's order in Docket No. 35269 in state district court in Travis County,[13] as well as in this Court.[14]  In December 2010, ETI abandoned those appeals.[15]  Accordingly, regardless of whether ETI thinks the PUCT's decision resulted in an $18.6 million windfall for Texas ratepayers, it is a final and non-appealable order.

The PUCT's 2009 decision that Texas ratepayers should receive 41% of EGSI's $120.1 million in 2007 Receipts is not subject to further appeal or reconsideration, and nothing in FERC's recent decision changes that fact.  In July 2014, FERC ordered additional bandwidth payments related to the 2006 operating year—the same year that spawned the $120.1 million in 2007 Receipts.[16]  Entergy made those payments in September 2014, and at the same time filed with FERC its calculation of each EOCs refunds or surcharges pursuant to the July 2014 order.  On May 15, 2015, FERC issued an order in Docket No. ER07-956-008 (the "2015 Order") approving Entergy's compliance filing.[17]  ETI has seized upon the 2015 Order as an opportunity to undo in part the long-final PUCT allocation decision that ETI litigated and lost in PUCT Docket No. 35269 and the related FERC proceedings.  However, the 2015 Order did not authorize ETI to retain for its shareholders the $10.9 million it received in September 2014.  Nor is it within FERC's jurisdiction to prohibit the PUCT from refunding that $10.9 million to ETI's Texas retail customers.  If ETI believes that the PUCT's decision to order a refund of the September 2014 payment is not supported by the evidence, or is contrary to law, it may appeal

---

[12] *Entergy Servs., Inc.*, 127 FERC ¶ 61,126 at PP 23-25 (2009).

[13]  *See Entergy Texas, Inc. v. Pub. Util. Comm'n of Tex.*, Cause No. D-1-GN-09-000816, in the 98th Judicial District Court of Travis County, Texas (Jan. 18, 2011).

[14] *Entergy Texas, Inc. v. Smitherman*, Cause No. A-09-CA-183-LY (W.D. Tex. Jan. 11, 2011).

[15] AR Item 62 (Docket No. 42730 Final Order) at Finding of Fact 49.

[16]  AR Item 32 (Joint Stipulation of Facts) at ¶ 18; *see also Entergy Servs., Inc.*, 148 FERC ¶ 61,086 at P 5 (2014).

[17]  *Entergy Servs., Inc.*, 151 FERC ¶ 61,112 (2015).

that decision to the Travis County District Court. And, in fact, ETI has done so.[18] But it may not seek to undo the long-settled PUCT determination of Texas's share of the 2007 Receipts. FERC's approval of a compliance filing in which Entergy calculated incremental bandwidth "refunds and surcharges" did not implicitly reopen and overrule the PUCT decision allocating the 2007 Receipts between EGSI's retail jurisdictions in Texas and Louisiana, an issue over which FERC has explicitly disclaimed jurisdiction in the past.

## II.    ARGUMENT AND AUTHORITIES

This case presents a simple legal question: Did FERC's May 2015 order approving Entergy's compliance filing preclude the PUCT from directing the refund to Texas ratepayers of the $10.9 million that ETI received from its affiliates in September 2014? The answer is straightforward. By its plain language, FERC's 2015 Order accepted Entergy's calculation of "true-up payments and receipts"[19] that represent "refunds and surcharges"[20] associated with the 2007 bandwidth payments, including the $10.9 million refund to ETI. That is, the May 2015 Order confirmed that the $10.9 million payment ETI received in September 2014 was consistent with FERC's July 2014 Order. FERC's 2015 Order makes it clear that these refunds and surcharges are distinct from the original bandwidth payments made in 2007.[21] Contrary to ETI's claims, FERC did not go beyond its stated intention of calculating refunds and surcharges to implicitly overrule and replace the PUCT's allocation of the $120.1 million in bandwidth payments that were distributed to EGSI in 2007. That allocation was decided six years earlier in

---

[18] *Entergy Texas, Inc. v. Pub. Util. Comm'n of Tex.*, Cause No. D-1-GN-16-000991, in the 98th Judicial District Court of Travis County, Texas (filed Mar. 7, 2016).

[19] *See Entergy Servs., Inc.*, 151 FERC ¶ 61,112 at P 1 (2015).

[20] *Id.* at PP 15-17.

[21] *See id.* at P 18 ("Thus, while the **_original bandwidth payments and receipts_** in 2007 for the 2006 test year involved Entergy Gulf States, who was then a party to the System Agreement, any **_refunds and surcharges_** associated with the 2007 bandwidth payments and receipts now must reflect the current members of the System Agreement.") (emphases added).

PUCT Docket No. 35269, a decision over which FERC has previously disclaimed jurisdiction[22] and which FERC did not even *mention* in its compliance order calculating bandwidth refunds and surcharges. ETI's argument stretches the language in FERC's 2015 Order far past the breaking point in an attempt to infuse it with meaning that is simply not there. The allocation of the original $120.1 million in 2007 bandwidth payments made to EGSI has long been decided. Rather than reopen a long-settled dispute over which it has explicitly disclaimed jurisdiction, FERC issued its 2015 Order for the narrow purpose of confirming Entergy's calculation of the additional $32.6 million in payments and receipts related to the 2006 production cost disparities. ETI indisputably received $10.9 million of that amount, and the PUCT properly ordered it refunded to ratepayers.

ETI's arguments invoke the Supremacy Clause, the Federal Power Act, and the filed-rate doctrine, and ETI is correct that FERC's decisions cannot be overturned by a state regulator. No party to this case or the PUCT case below claimed otherwise. However, ETI's arguments all rely on the same faulty assumption that FERC's 2015 Order somehow overruled the PUCT's 2009 decision that Texas customers would receive 41% of the $120.1 million in 2007 Receipts that were paid to EGSI. That is simply not the case. The 2015 Order was clear that FERC was only prospectively addressing the incremental "refunds and surcharges" to be paid or received by each of the existing operating companies. Doing so comports with FERC's past practice and the purposes of the Bandwidth Remedy. FERC did not undo the allocations of EGSI's 2007 Receipts set by the PUCT or LPSC, nor did it reverse its own prior decisions declining jurisdiction over the allocation of the 2007 Receipts. Instead, FERC's 2015 Order establishes that FERC, and not the PUCT or LPSC, has jurisdiction to allocate the $32.6 million in

---

[22] *See Entergy Servs., Inc.,* 127 FERC ¶ 61,126 at P 23 (2009), *reh'g denied*, 131 FERC ¶ 61,227 at P 9 (2010).

incremental "refunds and surcharges" that was to be distributed among the Entergy operating companies as they exist today, and that ETI was to receive $10.9 million. The PUCT's decision to refund to Texas ratepayers the $10.9 million payment that FERC ordered be made to ETI in no way conflicts with FERC's 2015 Order.

A.     **In 2009, the PUCT properly exercised its authority to determine Texas's share of the $120.1 million EGSI had received in RPCE payments in 2007.**

The core of ETI's argument is that the PUCT once bestowed an $18.6 million "windfall" on Texas ratepayers, an alleged error that ETI claims FERC has finally reversed in part, despite making clear in the past that it had no jurisdiction to do so.[23]   According to ETI, FERC accomplished this reversal not through any direct statement that ETI's ratepayers should not receive the $10.9 million RPCE payment made in 2014, but through the adoption of Entergy's methodology for calculating the amount due to ETI.  This argument is without merit, as becomes clear when examining the PUCT's 2009 decision related to the 2007 Receipts.

On May 29, 2007, Entergy filed the first bandwidth calculation (2007 Bandwidth Calculation) on behalf of all operating companies for disparities in production costs for 2006.[24] Under the 2007 Bandwidth Calculation, EGSI received $120.1 million—the 2007 Receipts—to refund production cost overpayments made by EGSI in 2006.[25]   Because EGSI was operating in both Texas and Louisiana at the time the 2007 Receipts were distributed to the EOCs,[26] FERC did not allocate the 2007 Receipts among EGSI's retail jurisdictions, instead leaving that

---

[23] *See id.* at P 23.

[24] AR Item 32 (Joint Stipulation of Facts) at ¶ 11.

[25] *Id.* at ¶ 13.

[26] *Id.* at ¶ 12 ("During calendar year 2006, and ***at the time payments resulting from the 2007 Bandwidth Calculation commenced***, EGSI had not yet jurisdictionally separated into ETI and EGSL.") (emphasis added).

decision for the PUCT and LPSC.[27]

To allocate the $120.1 million in 2007 Receipts, EGSI first made a filing with the LPSC, proposing a "relative production cost disparity" allocation method that resulted in an allocation of $30.4 million to Texas retail customers, $80.9 million to Louisiana retail customers, and $8.8 million to wholesale customers.[28] That case settled, and $80.9 million was distributed to EGSI's Louisiana customers. Subsequently, in PUCT Docket No. 35269, the PUCT addressed the issue of what portion of the $120.1 million EGSI's Texas customers should receive.[29] EGSI proposed the same allocation method it used in Louisiana, but the PUCT disagreed with that method, finding that it unreasonably favored Louisiana retail customers over Texas retail customers.[30] Instead, in January 2009, the PUCT ordered that the 2007 Receipts be distributed based on each jurisdiction's share of EGSI's actual production cost, which resulted in an allocation of $49 million to Texas retail customers and $62.4 million to Louisiana retail customers.[31] Because LPSC had already ordered $80.9 million to be refunded to EGSI's Louisiana retail customers, EGSI's successor EOCs ultimately distributed to ratepayers more than the $120.1 million that EGSI received from the other EOCs.[32]

In an attempt to circumvent the PUCT's decision in Docket No. 35269, Entergy submitted a proposed amendment to Service Schedule MSS-3 of Entergy's tariff—the Entergy

---

[27] *Id.* at ¶ 14.

[28] AR Item 50 (Docket No. 42730 Proposal for Decision) at 5.

[29] AR Item 32 (Joint Stipulation of Facts) at ¶ 15.

[30] AR Item 50 (Docket No. 42730 Proposal for Decision) at 6.

[31] *Id.*; *see also Compliance Filing of Entergy Texas, Inc. Regarding Jurisdictional Allocation of 2007 System Agreement Payments*, PUCT Docket No. 35269, Final Order at Ordering Paragraph 2, 2009 WL 2497473 (Jan. 7, 2009).

[32] AR Item 50 (Docket No. 42730 Proposal for Decision) at 6.

Service Agreement (ESA)—to FERC.[33]   Claiming that the PUCT's allocation decision had resulted in "trapped costs," Entergy sought to add a provision to the ESA that would have required allocations between retail jurisdictions for operating companies that span multiple jurisdictions to be determined through its relative cost disparity method.[34]

FERC disclaimed jurisdiction over the allocation dispute and denied Entergy's request to amend the ESA, thereby reaffirming that the distribution of an EOC's RPCE receipts among the retail jurisdictions it serves is exclusively a matter for the state regulatory commissions.[35] Further, FERC clarified that it "has never claimed that a Commission-approved allocation has been violated because two states allocated the receipts differently among their respective retail customers" and that EGSI assumed the risk of different allocations when it chose to operate in both Texas and Louisiana.[36]   It should be noted that at the time FERC determined that it did not have jurisdiction over the distribution of the $120.1 million in 2007 Receipts, EGSI had already jurisdictionally separated into ETI and EGSL.[37]   That fact, however, did nothing to change FERC's view that it was the state regulatory commissions that were responsible for allocating the $120.1 million received by EGSI in 2007.

In addition to its unsuccessful efforts at FERC, ETI appealed the PUCT's order in Docket No. 35269 in both state and federal courts.[38]   In its federal court appeal, ETI raised the same type

---

[33] AR Item 32 (Joint Stipulation of Facts) at ¶ 16; *see also Entergy Servs., Inc.*, 127 FERC ¶ 61,126 (2009).

[34] 127 FERC ¶ 61,126 at PP 7, 9-14.

[35] *Id.* at P 23.

[36] *Id.* at P 25.

[37] AR Item 32 (Joint Stipulation of Facts) at ¶ 3.

[38] *Application of Entergy Texas, Inc. for Authority to Change Rates and Reconcile Fuel Costs*, PUCT Docket No. 37744, Final Order at Finding of Fact No. 30.c, 2010 WL 5240342 at *6 (Dec. 13, 2010); *see also Entergy Texas, Inc. v. Pub. Util. Comm'n of Tex.*, Cause No. D-1-GN-09-000816, in the 98th Judicial District Court of Travis County, Texas (Jan. 18, 2011).

of Supremacy Clause and filed rate doctrine arguments that it has brought here.[39] Those prior appeals gave ETI an opportunity to attack and potentially overturn the PUCT's allocation order from Docket No. 35269, but ETI instead chose to dismiss and abandon its appeals.[40] As a result, the PUCT's allocation decision in Docket No. 35269 has been final and non-appealable since December 2010, and it is now far too late for ETI to now resurrect the arguments it should have made over six years ago.[41]

**B.     In January 2016, the PUCT properly directed ETI to refund to ratepayers the $10.9 million in RPCE payments it had received in 2014.**

In July 2014, after reviewing and resolving various contested issues in the 2007 Bandwidth Calculation, FERC directed Entergy to update the 2007 bandwidth payments and receipts among the EOCs and calculate resulting additional "refunds and surcharges."[42] In September 2014, Entergy complied with that order by requiring its operating companies to make $32.6 million in additional payments to each other. Entergy also made a compliance filing at that time in which it set out how the refunds and surcharges made pursuant to the July 2014 Order were calculated.[43]

Because EGSI was no longer in existence at the time of FERC's July 2014 Order and Entergy's September 2014 compliance filing, an assumption had to be made regarding how to split the amount that would have gone to EGSI between its successors, ETI and EGSL. To that

---

[39] *See Entergy Texas, Inc. v. Smitherman*, Cause No. A-09-CA-183-LY, Complaint for Declaratory and Injunctive Relief at ¶ 36 (W.D. Tex. Mar. 12, 2009).

[40] *Application of Entergy Texas, Inc. for Authority to Change Rates and Reconcile Fuel Costs*, PUCT Docket No. 37744, Final Order at Finding of Fact No. 30.c, 2010 WL 5240342 at *6 (Dec. 13, 2010); *see also Entergy Texas, Inc. v. Pub. Util. Comm'n of Tex.*, Cause No. D-1-GN-09-000816, in the 98th Judicial District Court of Travis County, Texas (Jan. 18, 2011).

[41] *Id.*; *see also* AR Item 50 (Docket No. 42730 Proposal for Decision) at 6.

[42] AR Item 32 (Joint Stipulation of Facts) at ¶ 18; *see also Entergy Servs., Inc.*, 148 FERC ¶ 61,086 at P 5 (2014).

[43] *Entergy Servs., Inc.*, 151 FERC ¶ 61,112 (2015).

end, Entergy calculated what it believed ETI and EGSL would have received had they existed in 2006.[44] To accomplish this calculation, Entergy first "determined the bandwidth receipts on a total company basis for EGSI," and then "allocated those bandwidth receipts between ETI and both the retail and wholesale jurisdictions of EGSL such that the resulting disparity for each jurisdiction [was] the same as that for EGSI in total."[45] This second step of allocating EGSI's bandwidth receipts among its successor operating companies was done using the relative cost disparity method previously rejected by the PUCT.[46]

Using this process, Entergy determined that EGSI should have received $150 million in RPCE payments in 2007, of which Entergy allocated $41.3 million to ETI and $108.7 million to EGSL.[47] This provided EGSI's successor operating companies with $29.9 million in additional bandwidth receipts over the $120.1 million originally allocated to EGSI.[48]

Next, Entergy used the production cost disparity method to allocate the $120.1 million of EGSI's 2007 Receipts, resulting in hypothetical original receipts of $30.4 million for ETI and $89.7 million for EGSL.[49] As a result, EGSI's additional $29.9 million was distributed such that ETI received $10.9 million ($41.3 million – $30.4 million) and EGSL received $19 million ($108.7 million – $89.7 million).[50]

TIEC filed a protest at FERC challenging Entergy's 2007 Bandwidth Recalculation.[51] Specifically, TIEC argued that Entergy should have skipped its second step of allocating EGSI's

---

[44] AR Item 32 (Joint Stipulation of Facts) at ¶¶ 21-24.

[45] *Id.* at ¶ 22

[46] *Id.* at ¶¶ 22, 24.

[47] *Entergy Servs., Inc.*, 151 FERC ¶ 61,112 at P 6 (2015); *see also* AR Item 32 (Joint Stipulation of Facts) at ¶ 23.

[48] 151 FERC ¶ 61,112 at P 6.

[49] *Id.*

[50] *Id.*

[51] AR Item 32 (Joint Stipulation of Facts) at ¶ 26.

recalculated receipts among ETI and EGSL.[52]   That is, Entergy should have distributed the additional bandwidth receipts as if EGSI still existed—and thereby allow the state regulatory commissions to allocate the additional $29.9 million—rather than directly allocating those refunds and surcharges to ETI and EGSL.[53]   FERC rejected this argument, determining that it has jurisdiction to allocate "refunds and surcharges" between ETI and EGSL because, unlike the "original" payments, which were made while EGSI was still the relevant operating company, the refunds and surcharges calculated in the 2007 Bandwidth Recalculation were distributed after EGSI's jurisdictional separation into ETI and EGSL.[54]   FERC then decided that ETI's proposed relative cost disparity allocation method was reasonable, and allocated the $29.9 million in incremental bandwidth refunds and surcharges accordingly.[55]   This resulted in ETI receiving an additional $10.9 million to pass along to Texas customers.[56]

In Docket No. 42730, the PUCT addressed whether it should require ETI to refund the $10.9 million in additional bandwidth receipts to its Texas retail customers, as the PUCT had required for all prior RPCE receipts.[57]   At the PUCT, ETI made many of the same arguments it does here, but the PUCT rejected ETI's framing of the issue, finding that:

> 50. The FERC orders implemented by [Entergy's] September 2014 compliance filing did not revisit or otherwise address how the original $120.1 million in 2007 bandwidth payments should have been allocated between EGSI's former Texas and Louisiana retail jurisdictions.

---

[52] 151 FERC ¶ 61,112 at P 10 ("Texas Consumers notes that in its recalculation filing, Entergy first calculated the incremental 2006 bandwidth receipts due to Entergy Gulf States, but then took the additional step of allocating those receipts to Entergy Gulf States' former retail jurisdictions.").

[53] *Id.* at P 9.

[54] *Id.* at P 17.

[55] *Id.* at P 18.

[56] *Id.* at P 6.

[57] *See* AR Item 62 (Docket No. 42730 Final Order).

51. FERC's acceptance of [Entergy's] compliance filing was limited to approving the incremental refunds and surcharges and did not require or authorize reallocation of the original $120.1 million in 2007 bandwidth payments between Texas and Louisiana customers. FERC stated in the order accepting [Entergy's] compliance filing that "it was reasonable for Entergy to recalculate the 2007 bandwidth filing and allocate refunds and surcharges for Entergy Texas and Entergy Gulf States Louisiana.[58]

As a result, the PUCT concluded that:

6. FERC's approval of the 2007 bandwidth recalculation only allocates incremental "refunds and surcharges" among the Entergy operating companies based on FERC's changes to the 2007 RPCE calculations, and does not reallocate the original 2007 RPCE payments among EGSI's retail jurisdictions.

7. It is equitable and reasonable for ETI to credit the $10.9 million RPCE payment to its customers through inclusion in ETI's fuel balance with interest.

8. The Commission may require ETI to pass through its incremental 2007 bandwidth recalculation receipts to its retail customers without interfering with FERC's jurisdiction or violating the filed-rate doctrine.[59]

The PUCT ordered that ETI credit the additional $10.9 million bandwidth receipt to Texas retail customers as a credit to its fuel balance.[60]

### C. FERC's 2015 Order only addresses the incremental payments due among the Entergy operating companies.

FERC's 2015 Order was limited to addressing the distribution of incremental payments among the EOCs, including the $29.9 million allocated between ETI and EGSL. FERC made this clear when it stated that "while the *original bandwidth payments and receipts* in 2007 for the 2006 test year involved Entergy Gulf States, who was then a party to the System Agreement, any *refunds and surcharges* associated with the 2007 bandwidth payments and receipts now must reflect the current members of the System Agreement."[61] FERC also described the limited

---

[58] *Id.* at 8-9.

[59] *Id.* at 9.

[60] *Id.*

[61] *Entergy Servs., Inc.*, 151 FERC ¶ 61,112 at P 17 (2015).

scope of its 2015 Order when it stated, "Entergy's compliance filing consists of the recalculation of the *true-up payments and receipts* based on 2006 test year data and supporting workpapers for each identified adjustment, along with the applicable interest calculation through **September 24, 2014, the date** *the payments and receipts* **will be made** among the Entergy Operating Companies."[62] These statements make it clear that FERC viewed Entergy's bandwidth *re*calculation as limited in scope to the $32.6 million in "true-up payments and receipts" that were made in 2014, and not as a wholesale recalculation and replacement of the "original bandwidth payments and receipts" made to EGSI in 2007.

The reasoning underlying FERC's decision to limit the scope of the 2015 Order to the incremental "refunds and surcharges" becomes apparent when that order is read in conjunction with FERC Opinion No. 514.[63] In Opinion No. 514, FERC addressed whether it had jurisdiction to allocate EGSI's *2008* Bandwidth Payment to ETI and EGSL or if it had to defer that decision to the PUCT and the LPSC.[64] In deciding that it did have jurisdiction, FERC relied on the fact that although the 2008 Bandwidth Payment was based on 2007 test year data, which represented a time period before EGSI's jurisdictional split, the 2008 Bandwidth Payment was distributed *after* the jurisdictional split.[65] Thus, as FERC paraphrased in the 2015 Order, "[t]he relevant fact for Entergy's bandwidth recalculation is not that [ETI] and [EGSL] were not in existence in 2006; instead, what is relevant is that the two Operating Companies exist now and stand in the place of [EGSI]."[66] In other words, the extent of FERC's jurisdiction over the allocation of a bandwidth payment is determined by the factual circumstances that exist when a

---

[62] *Id.* at P 1 (emphases added).

[63] *See id.* at P 17 (citing *Entergy Servs., Inc.*, 137 FERC ¶ 61,029 (2011) (Opinion No. 514))

[64] *Entergy Servs., Inc.*, 137 FERC ¶ 61,029 at PP 126-61 (2011).

[65] *Id.* at PP 154-61.

[66] *Entergy Servs., Inc.*, 151 FERC ¶ 61,112 at P 17 (2015).

particular bandwidth payment occurs.[67]  Because the 2008 Bandwidth Payments and the 2007 bandwidth "refunds and surcharges" at issue in this case were both made *after* EGSI's jurisdictional split, they were distributed to ETI and EGSL directly as a matter of practical necessity, and FERC exercised jurisdiction over those payments because they were made to EOCs that did not operate in multiple retail jurisdictions.[68]  Conversely, because the original $120.1 million in 2007 Receipts occurred *before* EGSI's jurisdictional split, and was thus received by EGSI rather than ETI and EGSL, FERC did not, and continues to not, exercise jurisdiction over how that $120.1 million payment in 2007 was allocated between Texas and Louisiana.

### D.    FERC has consistently declined jurisdiction over the allocation of the $120.1 million in 2007 Receipts, and FERC's 2015 Order did not disturb that long-held position.

FERC has been clear from the very beginning of the litigation related to the bandwidth remedy that "any issues related to the allocation of [RPCE] payments and receipts among retail customers is beyond [its] jurisdiction."[69]  Although Entergy has challenged this position on multiple occasions, FERC has consistently and unequivocally denied its requests to have FERC exercise jurisdiction over the retail allocation of the original $120.1 million in 2007 Receipts.

Entergy first requested that FERC exercise jurisdiction over the retail allocation of EGSI's original 2007 Receipts prior to the PUCT's decision in Docket No. 35269.[70]  Sensing that the LPSC and the PUCT might order inconsistent retail allocations of the RPCE payments made to EGSI, Entergy asked FERC for approval to amend the ESA such that FERC could

---

[67] *See id.* at P 19 ("Entergy Gulf States has ceased to exist and is no longer able to receive bandwidth payments.").

[68] *Id.* at P 17.

[69] *Entergy Servs., Inc.*, 120 FERC ¶ 61,094 at P 17 (2007).

[70] *Entergy Servs., Inc.*, 119 FERC ¶ 61,191 (2007).

directly allocate the original $120.1 million between EGSI's retail jurisdictions.[71]   FERC

rejected that request.[72]  Then, shortly after the PUCT handed down the final order in Docket No.

35269, Entergy again asked FERC to intervene and order a retail jurisdictional allocation of the

$120.1 million.[73]  FERC once more rejected Entergy's request, and went on to confirm the

PUCT's authority to make the retail allocation decision, explaining in its order (2009 Order) that:

> [A]ny issues related to the allocation of an individual utility's payments or receipts to retail customers are beyond the jurisdiction of this Commission. ***We disagree with Entergy's assertion that the Commission has jurisdiction to determine the share of the bandwidth receipts originally allocated to [EGSI] that, in turn, should be allocated by [EGSI] to its Louisiana and Texas retail customers***. . . .
>
> The potential for retail regulators to adopt different retail allocations of payments for multi-jurisdictional utilities has always existed, and the Commission has never claimed that a Commission-approved allocation has been violated because two states allocated the receipts differently among their respective retail customers. ***As has long been recognized, when more than one jurisdiction is involved there is an inherent operating risk that one jurisdiction may allocate on a different basis and the allocations may not mesh perfectly***.[74]

Nothing has changed since the 2009 Order that would justify FERC revisiting this long-

settled decision.   Indeed, at the time of the 2009 Order, EGSI had already completed its

jurisdictional split, and FERC was well aware of this fact.[75]  If FERC's position was that EGSI's

jurisdictional split gave it authority over the allocation of the original $120.1 million payment, it

would have expressly said so in 2009 when confronted with that exact question, rather than

doing so inadvertently six years later by approving an unrelated compliance filing that never

---

[71] *Id.* at PP 6-10.

[72] *Id.* at PP 24-25.

[73] *Entergy Servs., Inc.*, 127 FERC ¶ 61,126 (2009).

[74] *Id.* at P 23, 25 (emphases added).

[75] *Id.* at 14 ("Entergy states that it anticipates that the 2007 Allocation Amendment or the alternative [EGSI] Allocation Amendment need only be effective until December 31, 2007, to capture the time period during which [EGSI] spanned two retail jurisdictions.").

even *discusses* the $120.1 million original payment. Instead, as discussed above and in FERC's

2015 Order, FERC's jurisdiction over the allocation to ETI and EGSL of the bandwidth "refunds

and surcharges" that would have been owed to EGSI if it still existed did not come exclusively

from the fact that EGSI jurisdictionally separated into ETI and EGSL, but rather from the fact

that the payment of those "refunds and surcharges" occurred *after* that separation. In other

words, had the payment of those "refunds and surcharges" occurred prior to EGSI splitting into

ETI and EGSL, then FERC would not have had jurisdiction over the allocation of those amounts.

And while FERC now undoubtedly has jurisdiction to allocate those 2014 "refunds and

surcharges" to ETI and EGSL, it still lacks jurisdiction to allocate the original $120.1 million in

bandwidth payments made in 2007, and it made no attempt to do so in its 2015 Order.

> ### E.    ETI mischaracterizes the effect of FERC's 2015 Order.

At the crux of ETI's argument is the chart that was included in Entergy's September 2014

compliance filing and reproduced in FERC's 2015 Order.[76] That chart, which is reproduced

below, does not support ETI's position.

| Company | Total 2007 RPCE (payments) / receipts including interest [$Millions] | 2007 RPCE amounts previously (paid) / received per the May 27, 2007 initial filing [$Millions] | Remaining 2007 RPCE amounts to be (paid) / received [$Millions] |
|---|---|---|---|
| Entergy Arkansas | ($278.3) | ($251.7) | ($26.5) |
| Entergy Gulf States [Louisiana] | $108.7 | $89.7 | $19.0 |
| Entergy Louisiana | $93.8 | $91.1 | $2.7 |
| Entergy Mississippi | $34.5 | $40.6 | ($6.1) |
| Entergy New Orleans | $0.0 | $0.0 | $0.0 |
| Entergy Texas | $41.3 | $30.4 | $10.9 |

---

[76] *Entergy Servs., Inc.*, 151 FERC ¶ 61,112 at P 6 (2015) ("Entergy further states that pursuant to its comprehensive recalculation and calculated quarterly interest, the chart below summarizes the remaining or true-up amounts to be paid/received on September 24, 2014.").

ETI attempts to give independent legal effect to the first column of this chart by declaring that the $41.3 million entry for ETI is a "filed rate" that represents the total amount of 2007 RPCE receipts to which Texas customers are entitled.[77]  However, FERC made it clear that the purpose of this chart was not to set forth the total amount that each EOC was due across all bandwidth payments for 2007, but instead to "summarize[] *the remaining or true-up amounts to be paid/received on September 24, 2014*."[78]  ETI's argument extrapolates far too much from a number that is simply an accounting assumption used to arrive at the amount of refunds that ETI is owed.[79]

To understand why the $41.3 million number is nothing more than an accounting assumption, it is helpful to examine how the calculation that underlies this chart was performed. As explained above, the 2007 RPCE payments were calculated from 2006 data.[80]  During 2006, EGSI was still in existence, and it did not maintain separate sets of data for its Texas and Louisiana jurisdictions.  However, FERC determined that because ETI and EGSL are the EOCs that currently control what used to be EGSI's territory, the bandwidth "true-up payments and receipts" needed to be distributed to ETI and EGSL.  To that end, it was necessary to make an assumption about what amounts ETI and EGSL would have received had they existed in 2006. That calculation involved "determin[ing] the bandwidth receipts on a total company basis for EGSI," which resulted in a total of $150 million, or $29.9 million more than the $120.1 million

---

[77] Plaintiff's Initial Br.at 20-22.

[78] 151 FERC ¶ 61,112 at P 6 (emphasis added).

[79] *Id.* at P 1 ("Entergy's compliance filing consists of the recalculation **of the true-up payments and receipts** based on 2006 test year data and supporting workpapers for each identified adjustment . . . .") (emphasis added).

[80] *Id.*

in bandwidth payments that EGSI received in 2007.[81]  Rather than leave the allocation of the $29.9 million in true-up payments to the PUCT and the LPSC, FERC determined that because ETI and EGSL now stand in the shoes of EGSI, it was necessary to "allocate[] those bandwidth receipts between ETI and both the retail and wholesale of jurisdictions of EGSL such that the resulting disparity for each jurisdiction [was] the same as that for EGSI in total."[82]  This required determining both how the new amount ($150 million) and the original amount ($120.1 million) would have been distributed among ETI and EGSL had they been the relevant EOCs in 2006. FERC decided that using the relative cost disparity method—the same method that was rejected by the PUCT in Docket No. 35269—was reasonable, and it was by applying that method to divide the $150 million and $120.1 million amounts between ETI and EGSL that Entergy arrived at the first and second columns of the chart.  To determine the final distribution of the $29.9 million, the second column was simply subtracted from the first.  This resulted in ETI being allocated $10.9 million of the $29.9 million in marginal bandwidth "true-up payments."

Given the way that this calculation was performed, it is apparent that by accepting Entergy's compliance filing in its 2015 Order, FERC did not intend for each number on the chart reproduced above to constitute a "filed rate."  Instead, the first two columns are hypothetical determinations of what ETI and EGSL *would* have received had they existed as independent operating companies in 2007 under both the original bandwidth calculation (column 2) and the updated recalculation (column 1).  These numbers have no independent legal effect, and were merely intermediate steps necessary to calculate the "remaining or true-up amounts to be paid/received on September 24, 2014" (column 3), which was the stated purpose of the chart.[83]

---

[81] AR Item 32 (Joint Stipulation of Facts) at ¶ 22.

[82] *Id.*

[83] 151 FERC ¶ 61,112 at P 6.

Further, if FERC had intended to weigh in on the allocation of the prior RPCE payments—an allocation over which it had previously disclaimed jurisdiction[84]—it would have explained its intended meaning in the 2015 Order rather than overruling several years of FERC and PUCT precedent by implication. Despite the fact that ETI raised its complaints regarding alleged overpayment associated with the 2007 Receipts at FERC prior to the issuance of the 2015 Order,[85] that order never explicitly mentions the original $120.1 million payment to EGSI, never explicitly asserts jurisdiction over the allocation of those amounts, never explicitly overrules PUCT Docket No. 35269, never explicitly states that Texas retail customers have already received $48.9 million, and never explicitly authorizes ETI to retain any portion of the $10.9 million in remaining 2007 RPCE payments. It is simply implausible that FERC implied all of the steps necessary to reach ETI's desired result simply by approving the listing of $41.3 million as the "Total" amount of 2007 RPCE payments in the chart reproduced above.

The fact is that FERC did not mention the prior $120.1 million or its allocation in the 2015 Order because *FERC does not have jurisdiction over those matters*. As discussed above, FERC's jurisdiction over a particular RPCE payment is dependent on the facts at the time that payment is made to the EOC. When the $120.1 million payment was made, EGSI had not jurisdictionally separated into ETI and EGSL. Therefore, FERC lacked—and continues to lack—jurisdiction over the allocation of that amount between EGSI's retail jurisdictions, and any issue that ETI had with that allocation should have been resolved in its appeal of PUCT Docket No. 35269. But ETI abandoned its appeal of Docket No. 35269, and that decision has been final

---

[84] *Entergy Servs., Inc.*, 127 FERC ¶ 61,126 at PP 23, 25 (2009).

[85] 151 FERC ¶ 61,112 at P 12 ("Entergy further explains that the result was that retail customers in Texas were credited approximately $19 million more in 2007 bandwidth payments than was received by the utility.").

since December 2010.[86]  Any issue that ETI has with that allocation is water under the bridge, and if FERC's 2015 Order purported to challenge the long-settled decisions underlying the allocation of the original $120.1 million in 2007 Receipts, FERC would have done more to signify that fact than simply approve the inclusion of the number "$41.3" on a chart.

### F.    FERC's 2015 Order did not reject the PUCT's reasoning in Docket No. 42730.

ETI claims that FERC expressly rejected the PUC's reasoning in Docket No. 42370 when it denied TIEC's protest as intervenor in Docket No. ER-07-956-008.[87]  However, that argument mischaracterizes TIEC's position in the prior proceeding, as well as FERC's response.

TIEC's position in Docket No. ER-07-956-008 was that, because the calculations were based on EGSI's production cost data from 2006, the incremental payment of $29.9 million should still be distributed to EGSI and then allocated between ETI and EGSL by the state regulatory commissions.[88]  FERC's response was that TIEC's position "ignor[ed] that [EGSI] is no longer an Operating Company," and thus it was "reasonable for Entergy to recalculate the 2007 bandwidth filing and allocate *refunds and surcharges* for [ETI] and [EGSL] consistent with Opinion No. 514."[89]  Indeed, Entergy was well aware that TIEC only sought to have PUCT and LPSC determine the proper allocation of the incremental payment, as it argued that TIEC's position would create "an *incremental* trapping of bandwidth payments."[90]  FERC's 2015 Order merely rejected the notion that state regulatory commissions should have authority to allocate the incremental $29.9 million payment; it did not retroactively address how the original $120.1

---

[86] AR Item 50 (Docket No. 42730 Proposal for Decision) at 6.

[87] Plaintiff's Initial Br.at 18-19.

[88] 151 FERC ¶ 61,112 at PP 9-10.

[89] *Id.* at P 18 (emphasis added).

[90] *Id.* at P 12.

million should have been allocated.

### G.    PUCT Docket No. 42730 does not contravene any prior FERC Orders.

ETI claims that the decision in PUCT Docket No. 42730 contravenes four prior FERC orders that amend Service Schedule MSS-3 of the ESA to change how the bandwidth formula is calculated.[91]   However, this argument ignores the fact that all of these changes were made to a bandwidth formula that uses EGSI data as inputs and thus ultimately results in a 2007 bandwidth calculation for EGSI.[92]   That is, the changes to the formula contained in the four prior FERC orders only address the total amount that would have been due to EGSI; they do not address how the 2007 Bandwidth Payment is to be distributed between ETI and EGSL.   Therefore, it is not inconsistent with those orders to leave the long-final allocation decisions made by the PUCT and LPSC in place for the original $120.1 million and allocate the additional $29.9 million per the 2015 Order.   That order is fully consistent with the PUCT's decision in Docket No. 42370.

Further, it should be noted that ETI's argument that FERC's 2015 Order retroactively established that Texas's share of the RPCE payments for 2006 was only $41.3 million is inconsistent with the relief which it sought at the PUCT and still seeks here.   Under ETI's theory, FERC's 2015 Order would not only entitle it to keep the $10.9 million it received in 2014, but would also allow it to require Texas ratepayers to refund an additional $7.7 million ($18.6 million - $10.9 million).   Absent such a refund, under ETI's argument, Texas ratepayers will still have received more than the total amount they are due under a calculation that ETI insists resulted in a FERC-approved filed rate.   Under ETI's logic, allowing Texas ratepayers to keep

---

[91] Plaintiff's Initial Br. at 23-25.

[92] For example, one of the cited orders changed how Entergy calculated its net income tax for EGSI from using Louisiana's tax rate of 8 percent to taking an arithmetic average of Texas and Louisiana of 4 percent.  *Entergy Servs., Inc.*, 130 FERC ¶ 61,026 at P 11 (2010).  Such a change in the formula would only make sense if the revised formula still calculated payments for EGSI on a combined jurisdictional basis.

that marginal $7.7 million would be a violation of federal law, but ETI nevertheless does not seek to recover that amount here. ETI's admission that seeking that marginal $7.7 million would be a collateral attack on the 2009 PUCT allocation order[93] applies with equal force to ETI's misguided attempt to prevent the PUCT from directing the refund of ETI's September 2014 receipt. ETI's argument proves too much, and should be rejected.

## CONCLUSION AND PRAYER

TIEC respectfully requests that this Court uphold the PUCT's order in Docket No. 42730 refunding to ETI's ratepayers the $10.9 million received by ETI in September 2014.

Respectfully submitted,

*/s/ Rex D. VanMiddlesworth*
Rex VanMiddlesworth
State Bar No. 20449400
rexvanm@tklaw.com
Michael McMillin
State Bar No. 24088034
michael.mcmillin@tklaw.com
Thompson & Knight LLP
98 San Jacinto Blvd., Suite 1900
Austin, Texas 78701
(512) 469.6100
(512) 469.6180 FAX

**ATTORNEYS FOR TEXAS INDUSTRIAL ENERGY CONSUMERS**

---

[93] *See* Plaintiff's Initial Br. at 26 ("Mindful of the fact that final agency orders are generally not subject to collateral attack, ETI does not seek to revisit the PUC's decision in Docket No. 35269. That is, ETI does not seek to recover the $7.7 million difference between the $48,977,000 credit the PUC ordered in that docket and the $41.3 million total amount ETI has received in 2007 bandwidth payments per FERC order.").

## CERTIFICATE OF SERVICE

     I hereby certify that on the 31st day of October, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

John W. Williams
State Bar No. 21554100
Marnie A. McCormick
State Bar No. 00794264
Duggins Wren Mann & Romero, LLP
P. O. Box 1149
Austin, Texas 78767-1149
jwilliams@dwmrlaw.com
mmccormick@dwmrlaw.com
*Counsel for Plaintiff, Entergy Texas, Inc.*

John R. Hulme
Kellie E. Billings-Ray
Office of the Attorney General
Environmental Protection
Division P. O. Box 12548,
MCC-066
Austin, Texas 78711-2548
John.Hulme@texasattorneygeneral.gov
Kellie.Billings-
Ray@texasattorneygeneral.gov
*Counsel for Defendants,*
*Commissioners of the Public Utility Commission of Texas*

Daniel J. Lawton
Molly Mayhall Vandervoort
Lawton Law Firm, P.C.
12600 Hill Country Blvd., Ste. R275
Austin, Texas 78738
dlawton@ecpi.com
molly@mayhallvandervoort.com
*Counsel for Intervenor, Cities*

                                          */s/ Michael McMillin*
                                          Michael McMillin